T.C. Memo. 1998-109


UNITED STATES TAX COURT


HERBERT J. MEEKS AND PAULA J. MEEKS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 11972-96, 26425-96.    Filed March 17, 1998.


<u>Edward T. Perry</u>, for petitioners.

<u>Christian A. Speck</u> and <u>Bryan E. Sladek</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax in the amounts of $8,038, $6,426, and $1,988 for 1992, 1993, and 1994, respectively.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rules references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues for decision are: (1) Whether education expenses that Herbert J. Meeks (Herbert) incurred are deductible as trade or business expenses; (2) whether certain job-seeking and tax return preparation expenses are deductible; (3) whether expenditures that Paula J. Meeks (Paula) incurred are deductible as trade or business expenses; (4) whether petitioners' boat chartering activity was an activity engaged in for profit; and (5) whether petitioners substantiated charitable contributions in amounts greater than respondent concedes.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Sacramento, California, at the time they filed the petitions in this case.

<u>Educational Expenses</u>

From March 1986 until sometime in 1995, Herbert was a correctional officer with the State of California, Department of

---

[1] Respondent concedes that petitioners may deduct $1,200 of expenses from their boat chartering activity in 1992 pursuant to sec. 183(b)(2).

Corrections. He was originally assigned as an inmate supervisor and, later, to a transportation team where his responsibilities included supervising and observing inmate behavior, evaluating inmate conduct, and writing activity reports.

In 1992, Herbert entered the organizational behavior program (the program) at the University of San Francisco in Sacramento, California. The goal of the program was to train a student to be "an effective human resource specialist in the workplace." Herbert did not complete the program to obtain a degree.[2] In 1992 and 1993, petitioners deducted educational expenses of $6,379 and $1,551 for Herbert's tuition and books purchased for the courses at the University of San Francisco.

After completing the courses, Herbert received a temporary assignment at the Richard A. McGee Correctional Training Facility for the State of California (the academy). After this assignment, the academy interviewed Herbert for a position as an instructor. The position of instructor required 2 years of college education. In June of 1995, Herbert was promoted to sergeant instructor at the academy.

Job-Seeking and Tax Return Preparation Expenses

In 1992, petitioners took a deduction of $60 for tax preparation expenses. In 1993, petitioners also claimed

---

[2] While enrolled in the program, Herbert completed the following courses: Introduction to Organizational Behavior, Research in Organizations, Organizational Communication, Small Group Leadership, Social Ethics, Interdisciplinary Writing, and Critical Thinking (the courses).

deductions for miscellaneous expenses incurred in job seeking and for tax return preparation in the amounts of $887 and $65, respectively.

### Trade or Business Expenses

During the years in issue, Paula was employed full time as a dance and physical education teacher at Florin High School in Sacramento, California. She taught beginning jazz classes and gave instruction on technique and execution for the drill team. Additionally, she developed "Masterpiece Dance Theater", a touring company with dance performances by students. Petitioners deducted tickets to dance concerts, clothing, shoes, and other miscellaneous items related to Paula's employment at the school as miscellaneous itemized deductions on their 1992, 1993, and 1994 Federal income tax returns.

### Chartering Activity

In 1992, 1993, and 1994, petitioners owned two boats: A 30-foot wooden Chris Craft river cruiser and a 24-foot cuddy cabin (the boats). Petitioners have owned other boats for recreation in the past. Petitioners publicized that the boats were available for 12-hour chartered boating and fishing trips on the Sacramento River and Lake Comanche, California. Petitioners called their charter business "It Takes 2" and charged $240 to charter a boat. Petitioners provided fishing gear, bait, and safety vests for their customers.

Before engaging in the chartering activity, petitioners did not set up a business plan. Additionally, petitioners did not analyze the possibility of making a profit. Petitioners tried, but were unable, to obtain insurance which covered commercial use of the boats. Petitioners did not keep books and records of their chartering business.

Petitioners would go out on the boats about once a week, generally on weekends. Occasionally, petitioners would use the boats for recreational purposes. Petitioners had four to six paying customers in 1992 and had none in 1993 and 1994.

Petitioners primarily promoted their chartering services primarily through announcements made at the church they attended and flyers posted at other churches, barber shops, and bait shops. In addition, petitioners distributed business cards and attached them to the flyers.

For 1992, 1993, and 1994, petitioners deducted $14,646, $12,100, and $6,948, respectively, for expenses related to their chartering activity. In 1992, petitioners reported $1,200 in income from the activity. Petitioners reported no income from the chartering activity in 1993 or 1994.

Charitable Contributions

Petitioners regularly attended several churches in the bay area of California, including the New Hope Baptist Church in Oakland, California. During the years in issue, petitioners made financial contributions to these churches and to other charitable

organizations.  The New Hope Baptist Church did not keep records of contributions before 1994, nor did the other churches maintain any tracking systems of contributions during the years at issue. Petitioners did not maintain records of all their contributions.

Petitioners deducted charitable contributions of $7,953 and $7,640 in 1992 and 1993, respectively.  Respondent allowed $1,075 and $3,725 in 1992 and 1993, respectively, after petitioners substantiated those amounts.

## OPINION

All disputed items on petitioners' income tax returns are deductions they claimed.  Deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Education Expenses

Section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. Education expenses are considered ordinary and necessary business expenses if the education maintains or improves skills required by the taxpayer in his employment or meets the express requirements of an employer imposed as a condition for the taxpayer's continued employment, status, or rate of compensation. Sec. 1.162-5(a), Income Tax Regs.  Education expenses, however, are not deductible if they are "made by an individual for education which is part of a program of study being pursued by

him which will lead to qualifying him in a new trade or business." Sec. 1.162-5(b)(3)(i), Income Tax Regs. This is so even if the courses meet the express requirements of the employer. See Jungreis v. Commissioner, 55 T.C. 581, 591 (1970). It is immaterial whether the individual undertaking the education does in fact become employed in a new trade or business. Bodley v. Commissioner, 56 T.C. 1357, 1360 (1971). Petitioners have the burden of proving that the education does not qualify Herbert for a new trade or business. Rule 142(a).

Petitioners contend that the courses Herbert took maintained and improved his skills as a correctional officer. Petitioners also argue that Herbert had no intention of developing another career, nor did he seek to obtain a degree in organizational behavior.

Whether the education qualifies a taxpayer for a new trade or business depends upon the tasks and activities which he was qualified to perform before the education and those which he is qualified to perform afterwards. Weiszmann v. Commissioner, 52 T.C. 1106, 1110 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971). We have repeatedly disallowed education expenses where the education qualifies the taxpayer to perform significantly different tasks and activities. Browne v. Commissioner, 73 T.C. 723, 726 (1980); Glenn v. Commissioner, 62 T.C. 270, 275 (1974).

As a correctional officer, Herbert supervised inmates and handled other custodial duties. The record is not clear what

duties and activities were required of Herbert as a sergeant instructor, but the title of the position itself suggests that the primary duty would be instructing students at the academy. Thus, we find that the duties and activities of a correctional officer and a sergeant instructor are significantly different.

Upon completing the courses, Herbert met the 2-year college education requirement of the instructor position. We find that these courses qualified Herbert for the duties and activities of a sergeant instructor. Accordingly, we conclude that the education qualified Herbert for a new trade or business and sustain respondent's disallowance of the education expenses under section 162.

Job-Seeking and Tax Return Preparation Expenses

Petitioners also claimed deductions for miscellaneous expenses incurred in job seeking and for tax return preparation. Petitioners have presented no evidence to support the claimed job-seeking expenses or the tax preparation fee. We cannot be sure that petitioners intended to abandon these issues, but in any case we sustain respondent's disallowance of these deductions as petitioners have not met their burden of proof on these matters.

Trade or Business Expenses

As we stated earlier, section 162(a) allows a deduction for all ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. An employee's trade or

business is earning his compensation, and generally only those expenses that are related to the continuation of his employment are deductible. Noland v. Commissioner, 269 F.2d 108, 111 (4th Cir. 1959), affg. T.C. Memo. 1958-60. Pursuant to section 162(a), if expenditures qualify as "ordinary and necessary", an employee may deduct unreimbursed employee expenses. An employee may not deduct such expenses, however, if the expenses are not substantiated or if the employee has a right to, but fails to seek, reimbursement from the employer. Kennelly v. Commissioner, 56 T.C. 936, 943 (1971), affd. without published opinion 456 F.2d 1335 (2d Cir. 1972). Paula testified that her employer would have reimbursed her for the garment shields for school costumes had she sought a reimbursement. We, therefore, sustain respondent's determination with respect to this deduction.

Petitioners claimed deductions for concert tickets which Paula attended with her husband or students. For expenses to be deductible under section 162, petitioners must show that the purpose of the expenditure was primarily business rather than personal and that Paula's business benefited, or was intended to benefit, by the expenditure. Hynes v. Commissioner, 74 T.C. 1266, 1289 (1980); Schulz v. Commissioner, 16 T.C. 401, 405 (1951). Paula claims that she attended concerts to learn about the changes in jazz dance for her business as a dance instructor. We conclude that petitioners have failed to demonstrate that the purpose of the concerts was primarily business rather than

personal.  Therefore, we sustain respondent's determination with respect to this deduction.

Petitioners claimed deductions for items such as musical records, magazine subscriptions, and office supplies.  The musical records enabled Paula to conduct dance instruction in her business.  We find the expenses for jazz dance records to be ordinary and necessary to Paula's business as a dance instructor.  Although petitioners claim a business purpose for the magazine subscriptions, the types of magazines are so inherently personal that we conclude they are not business expenses under section 162.[3]  Paula testified that the office supplies were necessary for school.  Petitioners, however, did not introduce evidence that showed that the expenses relating to the office supplies would not be reimbursed by Paula's employer.  Therefore, we hold that petitioners are entitled to deduct the cost of the musical records and sustain respondent's disallowance of expenses relating to the magazine subscriptions and office supplies.

Petitioners also claimed deductions for clothing expenses.  For the cost of clothing and maintaining such clothing to be deductible as an ordinary and necessary business expense, it must (1) be required or essential in the taxpayer's employment, (2) not be suitable for general or personal wear, and (3) not be so worn.  <u>Yeomans v. Commissioner</u>, 30 T.C. 757, 767 (1958).

---

[3]  Petitioners claimed deductions for magazine subscriptions to Highlights, a children's magazine; and Essence and Ebony, magazines of style and entertainment.

The clothing items petitioners claimed as business expenses include hosiery, exercise wear, warmup suits, denim clothing, athletic shoes, and jazz shoes. At trial, Paula testified that these items were necessary to teach aerobics and jazz dance. She also testified that she does not wear the clothing "around the house." The fact that Paula chose not to wear the clothing when she was away from the school does not establish that such clothing is not suitable for her private and personal wear. See Hynes v. Commissioner, supra at 1291. It is relatively common for people to wear warmup clothes, exercise wear, and athletic shoes of the type purchased by petitioners while engaged in a wide variety of casual or athletic activities. We, however, find that the jazz shoes are not suitable for general or personal wear and hold that petitioners may deduct the cost of this item as a business expense. Petitioners presented no evidence that the other clothing purchased for Paula's business was not adaptable for wear outside the workplace. Therefore, we conclude that all items of clothing at issue, except the jazz shoes, are suitable for general or personal wear and hold that petitioners are not entitled to deduct the costs of those items.

Chartering Activity

Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to the

activity shall be allowed except as provided in section 183(b).[4] Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

For a deduction to be allowed under section 162 or 212(1) or (2), the taxpayers must establish that they engaged in the activity with an actual and honest objective of making an economic profit independent of tax savings. Antonides v. Commissioner, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Their expectation of profit need not have been reasonable; however, they must have entered into the activity, or continued with it, with the objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs.

Whether the requisite profit objective exists is determined by looking at all the surrounding facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th

---

[4] Sec. 183(b) allows deductions in situations not applicable to the instant cases.

Cir. 1986); sec. 1.183-2(a), Income Tax Regs. Petitioners have the burden of proving that they engaged in the chartering activity with the intent to make a profit. Rule 142(a).

Section 1.183-2(b), Income Tax Regs., provides a list of factors to be considered in the evaluation of a taxpayer's profit objective: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. The number of factors for or against the taxpayer is not necessarily determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. Cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980).

During the years at issue, petitioners did not conduct the chartering activity in a businesslike manner. Petitioners failed to maintain any books and records. Herbert testified that they did not retain receipts from customers. Petitioners also indicated that they had no business plan for the activity.

Although they attempted to obtain insurance for commercial use of their boat, they never did.  Herbert did not check with local authorities regarding the requirements for operating a passenger-carrying vessel on a public river.  In addition, he did not investigate whether a business license was required for the chartering activity. We are not convinced that petitioners operated their chartering service in a businesslike manner.

Careful investigation of a potential business to ensure the chance for profitability strongly indicates an objective to engage in the activity for profit.  Sec. 1.183-2(b)(2), Income Tax Regs.  While a formal market study is not required, a basic investigation of the factors that would affect profit generally is necessary.  Harrison v. Commissioner, T.C. Memo. 1996-509.  Herbert testified that he did not consult with any professionals about the profitability of the chartering activity.  Before entering into the activity, he did not analyze operating costs to determine whether the chartering business would be profitable.  This indicates that the chartering service was not engaged in for profit.

A record of substantial losses over several years may be indicative of the absence of a profit motive.  Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).  Petitioners never generated a profit for the chartering activity during the years

at issue. Additionally, 1992 was the only year in which petitioners received any revenue from the chartering activity.

Furthermore, there are elements of personal pleasure present in petitioners' chartering activity. Petitioners testified that they would occasionally use the boats for recreational purposes. Petitioners had also been involved in recreational boating prior to claiming the activity was a business. This indicates a lack of profit objective. Sec. 1.183-2(b)(9), Income Tax Regs.

We are not persuaded that the remote and speculative possibility of profit was petitioners' objective for commencing their chartering activity. After reviewing all the facts and circumstances, we conclude that petitioners did not engage in the chartering activity for profit within the meaning of section 183. We, therefore, sustain respondent's determination on this issue.

Charitable Contributions

Under section 170(c), contributions of money to or for the use of a religious organization are generally deductible. Henson v. Commissioner, T.C. Memo. 1979-110. A taxpayer, however, must substantiate his contributions. Id.; sec. 1.170A-13(a)(1), Income Tax Regs. If the record provides sufficient evidence that petitioners made charitable contributions, but they are unable to prove the exact amount, we can estimate the amount of the contributions. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). In order for the Court to make an estimate, we must have some basis in fact upon which an estimate can be made. Vanicek

v. Commissioner, 85 T.C. 731, 743 (1985).  Without such a basis, any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).  The burden is on petitioners to prove their entitlement to the claimed deductions.  Rule 142(a).

In this case, petitioners credibly testified and we find that they did make cash contributions to the churches they attended.  However, we are cautioned to bear heavily against taxpayers whose inexactitude is of their own making.  Cohan v. Commissioner, supra at 544.  Accordingly, we hold that petitioners are entitled to deduct $3,375 and $725 of their claimed charitable contributions for 1992 and 1993, respectively, in excess of the amounts allowed by respondent.

To reflect the foregoing and concessions of the parties,

Decisions will be

entered under Rule 155.